Carl W. ALLEMAN, et al., Plaintiffs,

v.

UNITED STATES of America,
et al., Defendants,

Siskiyou Regional Education Project
and Wilderness Watch, Intervenor
Defendants.

No. Civ. 99–3010–CO.

United States District Court,
D. Oregon.

April 12, 2005.

William Alan Schroeder, Schroeder & Lezamiz Law Offices, LLP, Boise, ID, James R. Dole, Schultz Salisbury Cauble & Dole, Grants Pass, OR, for Plaintiffs.

Jeffrey K. Handy, United States Attorney's Office, Jocelyn B. Somers, US Department of Agriculture Office of the General Counsel, Portland, OR, David A. Bahr, Eugene, OR, for Defendants.

## ORDER ADOPTING MAGISTRATE'S FINDINGS AND RECOMMENDATION

HOGAN, District Judge.

Magistrate Judge John P. Cooney filed Findings and Recommendation [#138] on January 10, 2005 in the above entitled case. The matter is now before the court pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). When either party objects to any portion of a magistrate judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Plaintiff timely filed objections. The court has, therefore, given *de novo* review of Judge Cooney's rulings.

The court finds no material or prejudicial errors, and adopts the Findings and Recommendation in its entirety, except the statement on page 1220 that new analysis under the National Environmental Policy Act will be required if Mr. Alleman again applies for a special use permit. Plaintiffs dispute this proposition, and the statement expresses an immaterial legal conclusion. The court expresses no opinion on the merits of the issue. Plaintiffs' motion for partial summary judgment [#89] is denied. Defendants' motion for summary judgment [#100] is granted. Defendant intervenors' motion for summary judgment [#112] is granted. This proceeding is dismissed.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

COONEY, United States Magistrate Judge.

Plaintiffs bring this action for Quiet Title pursuant to 28 U.S.C. § 2409a and for

Declaratory Judgment pursuant to 28 U.S.C. § 2201.[1] Plaintiffs seek a declaration that: 1) the Emlly right-of-way and/or the Chetco right-of-way are public highways across land owned by the United States to plaintiff Alleman's property; 2) the Emlly right-of-way is an easement by implication across land owned by the United States to plaintiff Alleman's property which is appurtenant to the property under the patent issued by the United States to plaintiff Alleman; and/or 3) the Emlly right-of-way is an easement by necessity across land owned by the United States to plaintiff Alleman's property. Before the court are plaintiffs' motion for partial summary judgment on plaintiffs' First Claim for relief (# 89), federal defendants' motion for summary judgment (# 100), and intervenor defendants' motion for summary judgment (# 112).

## I. FACTS[2]

The court finds the following facts:

Several accounts exist that document significant mineral activity as early as the mid 1850's around Kirby, Oregon. (Price Affidavit ¶¶ 36–39). Kerby, Oregon is 11 miles east of the Alleman property. (Price Affidavit ¶¶ 36–39; Schroeder Affidavit Exhibit 13).[3]

Several accounts exist that document mineral activity as early as 1878 in the upper Chetco River drainage, inclusive of the Little Chetco, Copper Creek, the Emlly Cabin, and Ditch Creek. (Price Affidavit ¶¶ 41–44). The Little Chetco River flows through the Alleman property. (Schroeder Affidavit Exhibit 13). Copper Creek flows into the Little Chetco River on the Alleman property. (Alleman Affidavit Exhibit 10 at 22). The Emlly Cabin and Ditch Creek, a tributary to the Little Chetco River, are immediately east of the Alleman property. (Schroeder Affidavit Exhibits 13 and 19 at 2).

Miners have utilized a general east-west path for travel in the general area known as the "Chetco Route" since the 1800s. There is no evidence that the modern Trail 1121, which plaintiffs identify as the "Chetco Route", is in the same location or follows the same alignment as any trail that existed before 1906. There is also no evidence that a road was ever constructed along Trail 1121 or that any improvements have been made to make the route more conducive to public travel. Trail 1121 is a foot path.[4] Humans used various trails to access and travel between mineral discov-

1. Plaintiffs' Fourth claim should be dismissed as moot as the administrative decision it challenges was withdrawn.

2. Local Rule 56.1 subsections (c) and (d) set forth the requirements for a party's concise statement of facts. Local Rule 56.1(b) requires that in opposing a motion for summary judgment, the opposition must include a response to the concise statement of facts which accepts or denies each numbered paragraph. Local Rule 56.1(c)(1) requires a citation to particular evidence supporting a party's statement of or denial of a material fact. Local Rule 56.1(f) provides that material facts set forth in a concise statement of facts that are not specifically denied or otherwise controverted by a separate concise statement of the opposing party will be deemed admitted.

3. Intervenor defendants object to plaintiffs' paragraphs 10, 11, and 12 arguing that the documents speak for themselves. The court finds support for these paragraphs in the evidence, except for paragraph 12 which is discussed in another footnote.

4. Federal defendants object to plaintiffs' paragraph 12 arguing that there is no evidence to support these facts. Mr. Price's affidavit ¶ 51 contains no citation to evidence to support the facts contained in that paragraph. Therefore, the court will not include paragraph 12. The court added Federal defendants' Statement of Facts paragraph 3. Plaintiffs deny this paragraph without citation to evidence.

eries, gold towns, and claims. (Price Affidavit ¶ 25).[5]

The Act of July 26, 1866 reserved certain sections of the public land referred to as the "Oregon–California" grant land sections from the public domain as of July 25, 1866. (Schroeder Affidavit Exhibit 4). Approximately ⅓ of each of the routes claimed by plaintiffs fall within O&C grant lands.[6]

On April 29, 1903, the land later referred to as the Siskiyou Forest Reserve was "temporarily withdrawn from settlement, entry, sale, or other disposal under the public land laws . . .". (Schroeder Affidavit Exhibit 12).[7] On October 5, 1906, the President of the United States signed a Proclamation that established the Siskiyou Forest Reserve and reserved the land sections therein from entry or settlement as of that date. The Proclamation provided that it did not affect "any prior valid claim". (Schroeder Affidavit ¶¶ 11, 12 and Exhibit 11). The term Forest Reserve was later changed to National Forest under the Act of March 4, 1907.[8] The National Forest surrounds the Alleman property. (Schroeder Affidavit ¶ 12).

The Act of June 6, 1916 revested the "Oregon–California" grant land sections in the United States. The revested lands were subject to classification by the Secretary of the Interior, in cooperation with the Secretary of Agriculture. The Act provided in part:

> That all the general laws of the United States now existing or hereafter enacted relating to the granting of rights of way over or permits for the use of public lands shall be applicable to all lands title to which is revested in the United States under the provisions of this Act. . . .

The Act of June 6, 1916 remained effective until June 24, 1954.

In 1923, the U.S. Department of Interior General Land Office surveyors identified on their map a trail called the Chetco Trail, but it is unclear if this trail followed the same path as modern Trail 1121. Only portions of the "Emlly Route" were identified by the same map. (Price Affidavit Exhibit 15 at 51–52).[9]

---

5. Federal defendants object to plaintiffs' paragraph 13 arguing that the term access has legal connotations. The court has modified paragraph 13 to reflect the evidence cited by the Price Affidavit. Federal defendants object to plaintiffs' paragraph 14 arguing that it is irrelevant as there is no evidence of road construction along the Emlly or Chetco Routes before the lands were removed from the public domain. Intervenor defendants object to paragraph 14 arguing that the documents speak for themselves. The court agrees that this paragraph is irrelevant and has omitted it.

6. Intervenor defendants object to plaintiffs' paragraphs 7, 8, and 9 arguing that they contain legal conclusions and that the documents speak for themselves. The factual allegations contained in plaintiffs' paragraph are similar to defendant intervenors' paragraph 2. The court modified plaintiffs' paragraph 7 to reflect the evidence. The court included part of Federal Defendants' Statement of Facts paragraph 12.

7. The court added defendant intervenors' paragraph 5 as modified by Schroeder Exhibit 12.

8. The court modified plaintiffs' paragraph 9 to reflect language in Schroeder Affidavit Exhibit 11. The court also added defendant intervenors' paragraph 6, except for the last sentence which plaintiffs' object to as a legal conclusion. The court added part of Federal Defendants' Statement of Facts paragraph 11.

9. Federal defendants object to this plaintiffs' paragraph 15 stating that there is no evidence that the "Chetco or Emlly Routes" as identified by plaintiffs existed during the 1800s or that what is identified as the Chetco Trail is in the same location as modern Trail 1121. Intervenor defendants object arguing that the documents speak for themselves. The court has modified this paragraph to reflect the contents of Exhibit 15 at 51–52 to the Price Affidavit.

Federal defendants object to plaintiffs' paragraph 16 arguing that: the Schroeder

On September 10, 1946, 78,850 acres of the Siskiyou Forest Reserve were administratively designated as wild area. (Schroeder Affidavit Exhibit 14). In about 1950, Amos Vahrenwald operated a bulldozer along the "Emlly Route" for the purpose of improving motorized access to the Alleman property and the land in the vicinity. (Vahrenwald Affidavit ¶¶ 4 and 5). The road that now follows the "Emlly Route" was constructed in 1952. Most, if not all of the construction, was completed by bulldozer and involved fairly extensive excavation on steep sided slopes. (FEIS at 14). When the road was constructed in 1952, a new segment of Trail 1129 was created. The historic Trail 1129 traveled south until it terminated at Trail 1121. (Price Affidavit Exhibit 2). The newly constructed portion forks west and northwest until it reaches Trail 1109. A photo-graph taken in 1956 or 1957 also shows the "Emlly Route". (Price Affidavit Exhibit 18).[10]

On June 24, 1954, Congress transferred jurisdiction over the revested "Oregon–California" grant land sections to the U.S. Department of Agriculture and subjected the lands to "all laws, rules, and regulations, applicable to the national forests." (Schroeder Affidavit ¶¶ 5, 6, 7 and Exhibits 5 and 6).[11]

Vehicular access has been restricted on the "Emlly Route" since the early 1960s. Later, a locked gate was installed at Onion Camp preventing motorized vehicles from using the road.[12]

Perry and Ruth Davis purchased the Little Chetco 1–3 unpatented mining claims in 1961. (Alleman Affidavit Exhibit 1 at 6, 8, and 10). These mining claims are the claims that Mr. Alleman patented.[13]

---

Affidavit Exhibit 13 does not demonstrate that the "Chetco Route" as identified by plaintiffs existed prior to 1906 or between 1906 and 1954; the current route as shown by plaintiffs does not match the route shown on the 1918 map, Price Affidavit Exhibit 14, or the two maps of 1923, Price Affidavit Exhibit 15 at 50–51; the first map to show part of the "Chetco Route" in approximately the same location with the same alignment is the 1954 map, Price Affidavit Exhibit 2,; the trial depicted on the 1856 map and discussed in the newspaper article is located eight miles east of the Alleman property and outside the Siskiyou National Forest; Exhibit 19 of the Schroeder Affidavit does not support the existence of the "Chetco Route" prior to 1906 or between 1916 and 1954. Intervenor defendants object to plaintiffs' paragraph 16 arguing that the documents speak for themselves. The court has examined the evidence and finds that it does not support plaintiffs' paragraph 16. Therefore, the court omits this paragraph. The court has included Federal defendants' Statement of Facts paragraph 4. Plaintiffs object to this paragraph without citation to evidence.

10.  Federal defendants provided a detailed objection to plaintiffs' paragraph 18 demonstrating that the evidence cited does not support the factual allegations of this paragraph. Intervenor defendants object to this paragraph arguing the documents speak for themselves. The court has modified this paragraph to reflect the evidence. The court included Federal Defendants' Statement of Facts paragraph 5. Plaintiffs deny this paragraph without citation to evidence.

11.  Defendants object to plaintiffs' paragraph 8 arguing that it states a legal conclusion. Intervenor defendants object to this fact arguing that it is a legal conclusion and that the document speaks for itself. The factual allegations contained in plaintiffs' paragraph 8 are similar to defendant intervenors' paragraph 3. The court has modified both paragraphs based on the contents of Exhibits 5 and 6. The court also added intervenor defendants' paragraph 4.

12.  Plaintiffs object to Federal Defendants' Statement of Facts paragraph 6 without citation to evidence.

13.  Plaintiffs object to Intervenor defendants' paragraph 11 arguing that whether Mr. and Mrs. Davis are plaintiffs predecessor in interest is a legal determination for the court. The court omitted this portion of the paragraph.

Mr. and Mrs. Davis received notice of the government's interest in regulating their access to their mining claims on June 24, 1963, when they received a letter from the Forest Service informing them that a mineral examination of their land was going to be conducted to determine if they were entitled to motorized access to the wilderness area. (Bahr Declaration Exhibit 1). On September 3, 1964, the Forest Service constructed and maintained a locked gate over the Emlly right-of-way. (Plaintiffs' Complaint ¶ 18).

A memorandum from the Forest Supervisor to the Regional Forester, dated November 6, 1962, contained a request for the examination of certain mining claims, including Placer Claim # 1, # 2, and # 3 of the Little Chetco Group. The memo stated that: "A determination of validity or probable validity is needed as a basis for issuing special-use permits for entry by motorized equipment into the Wild Area over the existing mining roads." (Alleman Affidavit Exhibit 4 at 1).

A mineral examination report, dated August 6, 1964, stated that the reason for the examination was "administrative problem involving the right of ingress [to certain mining clams, including the Little Chetco Group,] within the Kalmiopsis Wild Area over existing mining roads." (Alleman Affidavit Exhibit 5 at 1). The report lists the date of location for the Little Chetco claims as October 21, 1958. (Alleman Affidavit Exhibit 5 at 2). The report states that the claims are accessed via Forest Service and miners' access roads.

The report states that "The presence of sufficient gravel and values to encourage mining has been found by the claimant [Mr. Davis], and his right to ingress should not be challenged." (Alleman Affidavit Exhibit 5 at 3). The report noted that Mr. and Mrs. Davis were living in the Emlly cabin during the entire year and that they made two or three trips a year for supplies. (Alleman Affidavit Exhibit 5 at 5). The history and production section of the report states in part that "production from the placer deposits occurred in the 1870's and 1880's in the early days of the district" and that "present production is limited to small sniping operations along the smaller streams." (Alleman Affidavit Exhibit 5 at 5). The report concluded that the "good values found on the No. 1 claim of the Little Chetco group" were "sufficient to encourage Mr. Davis. For this reason we believe that he should have rights of ingress to his claim over the existing mine roads into the Kalmiopsis Wild Area." (Alleman Affidavit Exhibit 5 at 6). A mining claim report, dated July 15, 1964, states that "Values found on No. 1 claim of Little Chetco Group are sufficient for Mr. Davis to have rights of ingress to his claim over existing mine roads into Kalmiopsis Wild Area." (Alleman Affidavit Exhibit 6).

A memorandum from the Forest Supervisor to the Manager of the Land Office, file stamped December 31, 1963, the subject being "Rights-of-Way Acquired (Recordation and Appropriation of National Forest Road under 44 L.D. 513)", contains a request for consent to and approval of appropriation of a road, known as the Chetco Divide Road. The memo states that the road was acquired by the Forest Service through "other mining interest." The memo also states that the "road is part of the permanent Forest Transportation system and is essential to the continued multiple use management of the National Forest lands." The right-of-way width for the road was stated as 100 feet, although the actual width of the road was 10 feet. Consent and approval of the appropriation was given. (Schroeder Affidavit Exhibit 18 at 5–6). The memo also contained a map of the Chetco Divide Road. (Schroeder Affidavit Exhibit 18 at 7–8).[14]

14. Plaintiffs claim that the Chetco Divide Road is the same as the Emlly Route. The

Master Plats show a Forest Service right-of-way designated OR 014301. Part of this right-of-way follows what plaintiffs claim is the "Emlly Route". (Schroeder Affidavit Exhibit 7).[15]

On September 3, 1964, the United States enacted the Wilderness Act, 16 U.S.C. § 1331, *et seq.* The Act automatically designated 76, 800 acres of the Siskiyou Forest wild area as the Kalmiopsis Wilderness Area. (Schroeder Affidavit Exhibit 14).

The passage of the Wilderness Act put plaintiffs' and their predecessors in interest on notice that the government did not believe there were roads within the wilderness area; that the government claims a title interest in the trails in question in this dispute; and that motorized vehicles could not be used in a wilderness area. Section 4 of the Act states that "there shall be ... no permanent road within any wilderness area and that there shall be no ... use of motor vehicles ... within any such area." 16 U.S.C. § 1133(c). Section 4(d)(3) of the Act states that all mining patents over lands within a wilderness area "shall reserve to the United States all title in or to the surface of the lands or products thereof." 16 U.S.C. § 1133(d).[16] On January 14, 1977, the Forest Service published a regulation in the Federal Register that prohibited the use of motorized vehicles in

the wilderness area. 36 C.F.R. § 261.6; 43 Fed.Reg. 297.[17]

Larry Fox acquired title to the Little Chetco 1–3 mining claims on April 9, 1980. (Alleman Affidavit Exhibit 1 at 6, 8, and 10). Mr. Fox was made aware of the government's interest in regulating the use of the trails in question in June of 1980, when he received a letter from the Forest Service informing him that he must submit a plan of operations for his mining claims and that motorized vehicle use in the wilderness area was prohibited. (Bahr Declaration Exhibit 3). The letter stated "[a]s you are aware, motorized vehicle use is restricted in wilderness areas. Your plan must recognize this and address reasons why vehicle access is necessary, approximate vehicle use anticipated." (*Id.*).

Carl Alleman purchased the Little Chetco Group unpatented claims in 1982. In 1984, the Forest Service notified Mr. Alleman that a Plan of Operation was required to conduct mining activities on his unpatented claims. On February 17, 1984, Mr. Alleman filed a Notice of Intent to mine. Later that year, Mr. Alleman and another individual applied for a mineral patent.

The patent application for the Alleman property contains a section titled "DIRECTIONS TO THE CLAIMS". This section states that:

court has examined Schroeder Affidavit Exhibits 18 at 7–8 and 13 and Bahr Affidavit Exhibit 8. The Chetco Divide Road depicted in Exhibit 18 only appears to be the same as the Emlly Route depicted in Exhibit 13 and Exhibit 8 at the beginning of the road. After that they do not appear to be the same road. It appears that the Chetco Divide Road continues south, while the Emlly Route continues east.

15. Federal defendants object to plaintiffs paragraph 19 with a number of detailed arguments. Intervenor defendants object to this paragraph arguing that the documents referred to speak for themselves. The court has

modified this paragraph to represent the cited evidence. The exhibit cited in support of Paragraph 16 of Alleman's affidavit does not support Mr. Alleman's assertion regarding the "Emlly Route". The Forest Service did reserve two trail rights of way.

16. Plaintiffs object to Intervenors defendants' paragraph 9 without citation to evidence.

17. Plaintiffs object to a portion of Defendant Intervenors' paragraph 10 denying the legal interpretation of the effect of the regulation. The court omitted that portion of the paragraph.

The LITTLE CHETCO claim group is located on the Little Chetco River approximately thirty (30) miles by Forest Service and miners roads from U.S. 199 west of Kirby, Oregon. The road into the claims begins on U.S. 199 at the intersection between U.S. 199 and Eight Dollar Road. This road is a dirt road and extends over Fiddler Mountain past Onion Camp and on to the bottom of the Little Chetco River Canyon. The claims are located to the west of the end of the road.

(Alleman Affidavit Exhibit 7 at 7). Mr. Alleman claims that during his possession of his mining claims, the Forest Service did not deny that the "Emily Route" was a historic route of access to the Alleman property from Onion Camp. (Alleman Affidavit ¶ 16).

The Forest Service sent Mr. Alleman at least three letters in 1984 informing him that vehicular access was granted only to those individuals with authorization from the Forest Service. Furthermore, the access granted to those individuals was subject to restrictions. (Federal Defendants' Exhibits 102 and 103).

A letter sent by certified mail on February 8, 1984, notified Mr. Alleman that he was not complying with federal regulations regarding mineral activity and use of the Kalmiopsis Wilderness. The letter lists several federal regulations being violated, including regulations addressing the use and maintenance of roads and trails, the unauthorized occupancy of national forest land, and the use of motorized equipment within a wilderness area. The letter specifically states: "You are also notified that due to unauthorized motor vehicle use of roads within the wilderness, the lock at Onion Camp will be changed in the near future. Only those individuals with approved operating plans and written authorization will be issued keys." (Federal Defendants' Exhibit 102).

A second letter was sent in 1984 in response to Mr. Alleman's Notice of Intent filed on February 17, 1984. After listing several restrictions on Mr. Alleman's vehicular access, the letter states that "[k]eys will be issued to authorized individuals and any other vehicles found inside the wilderness will be considered to be in trespass and treated as such." (Federal Defendants' Exhibit 103).[18]

A set of keys to the new locks installed on the Onion Camp gate accompanied a third letter that was sent on June 25, 1984. This letter informed Mr. Alleman, as an authorized key holder, that "misuse by you or unauthorized users will be grounds for termination of the access privilege." (Federal Defendants' Exhibit 104). The letter also provided that Mr. Alleman was entitled to motorized access for mining related activities. (Bahr Declaration Exhibit 5 at 1).

On December 14, 1988, Carl Alleman and another individual received a patent for 60 acres of land from the United States (Alleman property). (Alleman Affidavit ¶¶ 9, 19; Alleman Affidavit Exhibit 10). The Alleman property is located in Curry County, Oregon and is within the Kalmiopsis Wilderness Area in the Siskiyou National Forest. Approximately 45.12 acres of the patent is fee simple title in the surface and mineral estate. The remaining 14.88 acres of the patent is title in the mineral estate only. (Alleman Affidavit Exhibit 10).[19]

---

18. Plaintiffs clarify that this correspondence is undated and contains no indication of delivery and object to its admission for lack of authentication. The court overrules this objection. This document is clearly authentic and plaintiffs offer no evidence to overcome the presumption that the letter was received.

19. Federal defendants admit to plaintiffs' paragraph 1 with clarification. The court added the facts contained in their objection. Defendant intervenors object arguing that the cited documents speak for themselves. The

When the patent was issued for the Alleman property, it reserved two trail right of ways on the Alleman property. A right of way for Trail 1121 and a right of way for Trail 1131. (Alleman Affidavit Exhibit 7 at 2). Mr. Alleman considers Trail 1131 the "Emlly Route" and Trail 1121 the "Chetco Route". (Alleman Affidavit ¶ 17).

The Forest Service informed Mr. Alleman that he would need a Special Use Permit (SUP) to continue having vehicular access along the "Emlly Route". Mr. Alleman submitted an application for a SUP in May 1996. The Forest Service subsequently prepared an EIS analyzing the effects of the requested SUP. The Regional Forester issued a Record of Decision (ROD) in January 1998 authorizing a SUP that granted vehicular access with certain restrictions along the "Emlly Route". Mr. Alleman never accepted the SUP offered by the Forest Service. The Regional Forester withdrew the offer on March 9, 2004, based on changes in environmental conditions and new information on fire and disease protection obtained in the five years since the ROD was issued. If Mr. Alleman again applies for a SUP, a new analysis under NEPA will be needed.

Mr. Alleman "elected not to accept the offered Special Use Permit, because in [his] view, the proffered Permit destroyed the intended purpose for [his] Private land [the Alleman property] and repudiated the historic access that [he] (and [his] predecessors) previously enjoyed and were granted via at least the 'Emlly Route'." (Alleman Affidavit ¶ 34).[20]

Plaintiffs identify two access routes through the Siskiyou National Forest to the Alleman property. Plaintiffs' Exhibit 13 contains a blue-green line, which plaintiffs claim illustrates the "Chetco Route". Plaintiffs' Exhibit 13 also contains an orange line, which plaintiffs claim illustrates the "Emlly Route".

The Forest Service states that the "Chetco Route", as claimed by plaintiffs, follows Forest Service Trail 1121, except for a portion of the trail which was relocated near Canyon Creek. Slightly less than half the "Chetco Route" is within the Kalmiopsis Wilderness Area. (Defendants' Exhibit 105). The "Chetco Route" is depicted on the United States Geological Survey map as a trail within the Kalmiopsis Wilderness. (Bahr Affidavit Exhibit 8).

The Forest Service states that the "Emlly Route", as claimed by plaintiffs, utilizes portions of Forest Service Trails 1124, 1129, and 1109. Approximately three-quarters of the "Emlly Route" is located within the Kalmiopsis Wilderness Area. (Defendants' Exhibit 101). The "Emlly Route" is depicted on the United States Geological Survey map as an unimproved 4 wheel drive road up to the boundary of the Klamiopsis Wilderness and as a trail within the Kalmiopsis Wilderness. (Bahr Affidavit Exhibit 8).[21]

Trail 1129 and Trail 1121 converge on the Alleman property to form one trail. This trail then proceeds west through the property and beyond. (Alleman Affidavit Exhibit 10 at 22).[22]

court has modified the facts to reflect the evidence.

**20.** Federal defendants object to plaintiffs' paragraph 3 arguing that the Forest Service recognizes access to the Alleman property via portions of trails 1124, 1129, 1109, and 1121. They also state that trail 1121 was relocated. The court has modified plaintiffs' paragraph 3 to reflect the evidence.

**21.** Federal defendants admit to plaintiffs' paragraphs 4 and 5 insofar as the lines on the map represent the location of the routes as identified by plaintiffs. Intervenor defendants object to paragraphs 4, 5, and 6 arguing that the documents are the best evidence of their contents. The court modified these paragraphs to reflect the evidence. The court also added Federal defendants' Statement of Facts paragraph 2.

**22.** Federal defendants deny plaintiffs' paragraph 6 arguing that Trail 1109, which plain-

The Forest Service published "A Guide to Trails on the Illinois Valley Ranger District". This guide illustrates the Emlly Cabin Trail # 1129. The guide does not illustrate the entire "Emlly Route" as depicted by plaintiffs in Exhibit 13 of the Schroeder Affidavit. The guide also illustrates the Little Chetco Trail # 1121. The guide does not illustrate the entire "Chetco Route" as depicted by plaintiffs in Exhibit 13 of the Schroeder Affidavit. (Schroeder Affidavit ¶ 25).[23]

No portion of the "Emlly Route" as designated by the plaintiffs lies within Josephine County. (Schroeder Affidavit Exhibit 13). On December 31, 1996, the Board of County Commissioners for Curry County, Oregon (Board) passed a resolution recognizing the need for access under the Wilderness Act and the Alaska National Interest Lands Conservation Act to the Alleman property via the road plaintiffs designate as the "Emlly Route" between Onion Camp and Emlly Cabin. The resolution states that the road "has been used by motorized traffic for at least 60 years." (Alleman Affidavit Exhibit 12).[24]

By the time this suit was commenced, more than twelve years had passed since plaintiffs or their predecessors in interest received notice of the government's interest:

a) With regard to the notice provided by the enactment of the Wilderness Act the twelve year statute of limitations ran on September 3, 1976, see e.g. Schroeder Affidavit Exhibit 14;

b) With regard to the notice provided by 36 C.F.R. § 261.6 twelve year limitations period ran on January 14, 1989, see Bahr Decl. Exhibit 1;

c) With regard to Mr. And Mrs. Davis's notice of the government's interest in regulating the trails the twelve year limitations period ran on June 24, 1975, see Bahr Decl Exhibit 3;

d) With regard to Mr. Fox's notice of the government's interest in regulating the trails the twelve year limitations period ran on June 5, 1992 see Bahr Decl Exhibit 4; and

e) With regard to Mr. Alleman's notice of the government's interest in regulating the trails the twelve year limitations period ran on December 12, 1995; see Bahr Decl Exhibit 5.[25]

## II. *LEGAL STANDARDS*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment as a matter

---

tiffs identify as part of the "Emlly Route", terminates at its junction with Trail 1121, referred to as the "Chetco Route", and that Trail 1121 continues as a foot path west through and beyond the Alleman property. The court has modified this paragraph to reflect the evidence.

23. Federal defendants object to plaintiffs' paragraph 17 arguing that the Forest Service identifies Trail 1121 as part of the trail system. The court has modified this paragraph to accurately reflect the contents of paragraph 25 of the Schroeder Affidavit.

24. Federal defendants object to plaintiffs' paragraph 20 arguing that no portion of the "Emlly Route" is within Josephine County

and the resolution by Board for Curry County did not designate the "Emlly Route" as an R.S. 2477 road. Intervenor defendants object arguing that this paragraph contains legal characterizations of the acts by the Josephine County and Curry County Boards and that the documents speak for themselves. The court has modified this paragraph to reflect the evidence. The court excluded intervenor defendants' paragraphs 22 and 23 because Exhibit 12 of the Alleman affidavit appears to be a different resolution than those referred to by intervenor defendants.

25. Plaintiffs object to Defendant Intervenors' paragraph 26 without argument and without citation to evidence.

of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.), *cert. denied*, 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). In deciding a motion for summary judgment, the court must determine, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citations omitted). The parties bear the burden of identifying the evidence that will facilitate the court's assessment. *Id.*

The moving party bears the initial burden of proof. *See Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir.), *cert. denied*, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995). The moving party meets this burden by identifying portions of the record on file which demonstrates the absence of any genuine issue of material fact. *Id.* "[T]he moving party ... need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." *Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390, 393 (4th Cir.1994), *cert. denied*, 513 U.S. 1191, 115 S.Ct. 1254, 131 L.Ed.2d 135 (1995) (citation omitted); *See City of Mt. Pleasant, Iowa v. Associated Electric Co-op., Inc.*, 838 F.2d 268, 273–274 (8th Cir.1988) (it is sufficient for the movant to argue that the record does not contain an issue of fact and to identify that part of the record that supports that assertion).

In assessing whether a party has met their burden, the court must view the evidence in the light most favorable to the nonmoving party. *Allen v. City of Los Angeles*, 66 F.3d 1052 (9th Cir.1995). All reasonable inferences are drawn in favor of the nonmovant. *Id.* If the moving party

meets their burden, the burden shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Auvil v. CBS "60 Minutes"*, 67 F.3d 816 (9th Cir.1995), *cert. denied*, 517 U.S. 1167, 116 S.Ct. 1567, 134 L.Ed.2d 666 (1996). The nonmoving party cannot carry their burden by relying solely on the facts alleged in their pleadings. *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir.1993). Instead, their response, by affidavits or as otherwise provided in Rule 56, must designate specific facts showing there is a genuine issue for trial. *Id.*

## III. *DISCUSSION*

Plaintiffs move for partial summary judgment arguing that the undisputed evidence demonstrates that the "Chetco and Emlly Routes" are public roads under Oregon law and Section 8 of the Act of July 26, 1866, commonly known as R.S. 2477.

Federal defendants in response to plaintiffs' motion and in support of their motion for summary judgment argue that:

1) plaintiffs' R.S. 2477 claim is barred by the Quiet Title Act because plaintiffs lack the requisite title interest in the property in question and because the statute of limitations period under the Act has expired;

2) even if plaintiffs' R.S. 2477 claim is not barred, plaintiffs failed to present sufficient evidence to prove the existence of an R.S. 2477 road; and

3) plaintiffs' second and third claims fail as a matter of law because: a) all common law easements are preempted by the Alaska National Interest Land Conservation Act (ANILCA) and the Federal Land Policy and Management Act of 1976 (FLPMA); b) the general rule is that nothing passes by implication in a public grant; and c) there is no need for a com-

mon law easement where ANILCA grants a statutory right of access.

Intervenor defendants in support of their motion for summary judgment and in response to plaintiffs' motion argue that: 1) plaintiffs, as private parties, do not have standing because they are not the proper parties in interest to assert a claim which can vest only with a public entity; 2) plaintiffs lack Article III standing because their alleged injury will not be redressed by a favorable decision; 3) the court does not have jurisdiction under the Quiet Title Act over plaintiffs' R.S. 2477 claim because: a) plaintiffs lack the requisite title interest in the property in question and b) the statute of limitations period under the Act has expired; 4) even if plaintiffs' have standing and the court has jurisdiction over their R.S. 2477 claim, plaintiffs failed to present sufficient evidence to prove the existence of an R.S. 2477 road; 5) the Forest Service's actions with regarding to the trails in question do not establish that the trails are R.S. 2477 rights-of-way; 6) plaintiffs' R.S. 2477 claim fails because plaintiffs did not plead their claim with the particularity required by the Quiet Title Act; 7) plaintiffs' common law claims are barred by the Quiet Title Act's twelve year statute of limitations; 8) plaintiffs' common law claims are preempted by federal law; 9) plaintiffs' common law claims are barred because the Forest Service discharged any duty to provide access to the Alleman property by offering to exchange the Alleman property for other Forest Service land of equivalent value.

In response to federal defendants and intervenor defendants' motions and in support of their motion plaintiffs argue that:

1) *Kinscherff v. U.S.,* 586 F.2d 159 (10th Cir.1978), *Long v. Area Manager, Bureau of Reclamation,* 236 F.3d 910 (8th Cir. 2001), and *Staley v. U.S.,* 168 F.Supp.2d 1209 (D.Colo.2001) are not applicable to this case because those courts applied state law in reaching their decisions;

2) under Oregon law, as set forth in *Rendler v. Lincoln County,* 302 Or. 177, 728 P.2d 21 (1986), a private citizen, as a member of the public, has a sufficient interest in a public road to support a claim for declaratory relief;

3) *Shultz v. Department of the Army, United States,* 10 F.3d 649 (9th Cir.1993) (*Shultz I*), *opinion withdrawn and superceded on rehearing by Shultz v. Department of the Army, United States,* 96 F.3d 1222 (9th Cir.1996), *cert. denied,* 523 U.S. 1072, 118 S.Ct. 1511, 140 L.Ed.2d 665 (1998), demonstrates that under Ninth Circuit law this court has jurisdiction under the Quiet Title Act, plaintiffs have standing, and a favorable decision would redress plaintiffs' injury;

4) plaintiffs have standing to assert their Second and Third claims as these claims are unique to plaintiffs and the reasoning in *Kinscherff* would not apply;

5) intervenors argument that plaintiffs do not have Article III standing is not supported by statutory authority or federal law—the option to condemn any property is not enough to eliminate Article III standing;

6) under *Michel v. U.S.,* 65 F.3d 130 (9th Cir.1995), the Quiet Title Act's statute of limitations does not begin to run on plaintiffs' claims until the federal defendants deny plaintiffs all access to the Alleman property—the undisputed evidence shows that plaintiffs have never been denied all access to the Alleman property;

7) even if the limitations period barred plaintiffs' R.S. 2477 claim, it does not bar

plaintiffs' Second and Third claims because those rights arise out of the issuance of the mineral patent to the Little Chetco claims in 1988;

8) simply passing the Wilderness Act of 1963 did not commence the statute of limitations because if Congress intended the Wilderness Act to be a reclaiming of rights previously relinquished to the states or private citizens it would have stated that intent;

9) plaintiffs have presented sufficient evidence that both the "Chetco and Emlly Routes" were used by the public at large as of the necessary dates;

10) *Adams v. U.S.*, 255 F.3d 787, 794 (9th Cir.2001) is not applicable to this case and does not bar plaintiffs' common law claims—defendants' cross motions should be denied and plaintiffs should be allowed to advance their second and third claims later in the proceeding as part of the scope of the easement;

11) ANILCA does not apply to this case;

12) ANILCA and FLPMA are not applicable to the Kalmiopsis Wilderness;

13) common law easements as a source of access have not been preempted;

14) plaintiffs pleaded their R.S. 2477 with sufficient particularity; and

15) the Forest Service has not discharged its duty to provide plaintiffs access.

In reply, federal defendants argue that:
1) plaintiffs' common law claims are preempted by ANILCA and/or the Wilderness Act;

2) plaintiffs have failed to prove they meet the requirements of Article III standing—there is no proof of injury in fact;

3) plaintiffs do not have standing under the Quiet Title Act because they do not have the requisite interest in the public road;

4) *Shultz I* did not address the issue of standing under the Quiet Title Act;

5) *Shultz II* found the plaintiff had Article III standing because the road at issue was the only access to his property and the military refused to provide access—the case did not address standing under the Quiet Title Act;

6) the cases relied upon by defendants to show plaintiffs lack standing under the Quiet Title Act were not all decided on state law grounds;

7) *Rendler* does not support plaintiffs' case because: a) the court decided whether a citizens' group had standing to intervene; b) the court did not address whether a private citizen has standing to initiate a quiet title action; c) ORCP allows any person who has any interest to intervene, but the Quiet Title Act requires the plaintiff to set forth with particularity the right, title or interest claimed; and d) the court specifically stated that any governmental entity should be made a party to a declaratory proceeding;

8) plaintiffs' claims under the Quiet Title Act are barred by the twelve year statute of limitations—plaintiffs or their predecessors in interest knew or should have known that the United States claimed exclusive ownership over the lands in questions and plaintiffs claims arose when the government limited access to the road;

9) in *Shultz I* the government did not regulate the flow of traffic, but in this case the road was gated and locked in the 1960s and access was regulated by the government as in *Park County, Montana v. U.S.*, 626 F.2d 718 (9th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 923, 66 L.Ed.2d 841 (1981);

10) plaintiffs failed to prove the "Chetco or Emlly Routes" are R.S. 2477 roads;

11) because plaintiffs have a statutory right of access, they do not have a common law easement.

In reply, intervenor defendants argue that:

1) plaintiffs do not have standing under the Quiet Title Act because they do not have the requisite interest in the public road;

2) *Rendler* supports intervenors' arguments and undermines plaintiffs' arguments—the issue decided was intervention, not standing and the requirements for standing are stricter;

3) plaintiffs do not have Article III standing because they are seeking to quiet title in a third party that is not involved in this lawsuit and plaintiffs cannot receive compensation for the road;

4) plaintiffs claim is barred by the Quiet Title Act's statute of limitations—plaintiffs, their predecessors in interest, and the general public have been on notice since 1963 that the United States asserted an interest in the subject property;

5) *Michel* is distinguishable from this case;

6) plaintiffs have not adequately plead their claims under the Quiet Title Act;

7) plaintiffs have not adequately established the elements of an R.S. 2477 claim;

8) plaintiffs' common law claims are preempted by federal statutes; and

9) the Forest Service discharged its duty to provide access when it made the land exchange offer.

### First Claim—R.S. 2477 Claim

Plaintiffs bring this action pursuant to the Quiet Title Act and the Declaratory Judgement Act seeking a declaration that the "Chetco Route" and the "Emlly Route" are R.S. 2477 roads. An R.S. 2477 road is a public highway constructed over public lands pursuant to Section 8 of the Act of July 26, 1866.

■ Both federal defendants and intervenor defendants argue that this court lacks subject jurisdiction over plaintiffs'

R.S. 2477 claim brought under the Quiet Title Act. When subject matter jurisdiction is challenged, the court presumes lack of subject matter jurisdiction until the plaintiff proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

. As a sovereign, the United States is immune from suit except as it consents to be sued. *Caton v. U.S.,* 495 F.2d 635, 637 (9th Cir.1974). The terms of its consent to be sued define the courts jurisdiction to entertain the suit. *Id.*

■ The Quiet Title Act is the exclusive means by which adverse claimants can challenge the United States' title to real property. *Leisnoi, Inc. v. U.S.,* 170 F.3d 1188, 1191 (9th Cir.1999). The Quiet Title Act provides in part that:

> The complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States. 28 U.S.C. § 2409a (d).

Plaintiffs first claim for relief seeks to have the "Chetco and Emlly Routes" declared public highways under R.S. 2477. (Complaint at 19). The complaint alleges that plaintiffs use these routes to access the Alleman property. (I. at 10–12).

■ Plaintiffs "interest" in using the "Chetco or Emlly Routes" as members of the public is not an interest in real property as contemplated by the Quiet Title Act. *Kinscherff v. U.S.,* 586 F.2d at 160. Although the court in *Kinscherff* relied in part on New Mexico state law in determining that only parties claiming title may bring a quiet title action for a public road, Oregon law also only allows parties claiming title to the property to bring a quiet title action. *See Ellis v. Municipal Re-*

*serve and Bond Co.,* 60 Or.App. 567, 570–571, 655 P.2d 204 (1982).

Plaintiffs rely on *Rendler* arguing that they may bring a declaratory judgment action to have the routes declared public highways under Oregon law.[26] In *Rendler,* the court allowed members of the public who used the road to intervene in a declaratory action between the County and a private party seeking to vacate the road; members of the public were not bringing the suit. *Rendler,* 302 Or. at 183, 728 P.2d 21. The court specifically stated that the government entity should be a party to the action when it would be responsible for maintenance of the road. *Id.* This court finds that *Rendler* does not demonstrate that plaintiffs have the requisite "interest" to bring an action under the Quiet Title Act.

The court finds that plaintiffs "interest" as members of the public in using the routes, is insufficient to bring an action to have the roads declared R.S. 2477 roads under the Quiet Title Act. *Kinscherff,* 586 F.2d at 160–161; *See Southwest Four Wheel Drive Ass'n. v. Bureau of Land Management,* 363 F.3d 1069, 1071 (10th Cir.2004) (members of the public do not have title in public roads and therefore, cannot maintain a quiet title action); *See also Long v. Area Manager, Bureau of Reclamation,* 236 F.3d 910, 915 (8th Cir. 2001) (right of an individual to use public road is not a right or interest in property for the purpose of the Quiet Title Act); *See also Fairhurst Family Ass'n, LLC v. U.S. Forest Service, Dept. of Agriculture,* 172 F.Supp.2d 1328, 1330–1333 (D.Colo. 2001) (plaintiff's interest as a member of the public in using an R.S. 2477 right-of-way is an insufficient interest to state a claim under the Quiet Title Act).

The Quiet Title Act also provides in part that:

Any civil action under this section, except for an action brought by a state, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States. 28 U.S.C. § 2409a(g).

The waiver of sovereign immunity contained in the Quiet Title Act is not unconditional; suits must be brought within the twelve year statute of limitations. 28 U.S.C. § 2409a(g). When legislation waiving sovereign immunity contains a statute of limitations, the statute of limitations constitutes a condition on the waiver of sovereign immunity. *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). The Quiet Title Act statute of limitations is jurisdictional. *Park County,* 626 F.2d at 720. Because the statute of limitations is a condition of the waiver of sovereign immunity, it is construed strictly in favor of the government. *Bank One Texas v. U.S.,* 157 F.3d 397, 402 (5th Cir.1998).

The court must determine when the plaintiffs or their predecessors in interest knew or should have known of the government's interest in the property. This is a test of reasonableness. *State of California, ex rel. State Land Com'n v. Yuba Goldfields, Inc.,* 752 F.2d 393, 396 (9th Cir.1985). "The question is whether the United States' actions would have alerted a reasonable landowner that the government claimed an interest in the land." *Shultz v. Dept. of Army, U.S.,* 886 F.2d 1157, 1160 (9th Cir.1989).

26. Plaintiffs also rely on the Ninth Circuit's opinion in *Shultz v. Dept. of Army, U.S.,* 10 F.3d 649 (9th Cir.1993). This opinion was withdrawn and superseded by *Shultz v. Dept. of the Army,* 96 F.3d 1222 (9th Cir.1996).

Federal defendants argue that plaintiffs and their predecessors in interest had notice of the government's interest in the roads in the early 1960s when the Forest Service began regulating access and in 1984 when the Forest Service sent plaintiff Alleman three letters informing him that vehicular access required authorization. Federal defendants also argue that *Michel* is distinguishable from this case and that the government does not have to act in a manner that is openly hostile and adverse to the landowners' interest to trigger the statute of limitations. Defendant intervenors argue that plaintiffs and their predecessors in interest had notice of the government's interest in the roads: when the government limited access to the roads in 1963 and 1984; when the Wilderness Act was passed and the area in which the routes were located was included in the wilderness area; and in 1977 when the Forest Service published regulations that prohibited the use of motorized vehicles in the wilderness area. Plaintiffs argue that: they had unrestricted access over the routes until 1993 when Mr. Alleman was first advised he could only use the roads pursuant to a special use permit; the letters from the Forest Service do not suggest the government could deny him access; the gate erected in the 1960s did not limit Mr. Alleman's access; under *Michel* and *Shultz I* the statute of limitations did not begin to run until 1995 when Mr. Alleman no longer had a key to the locked gate; and the statute of limitations did not begin to run on plaintiffs' second and third claims until 1988 with the issuance of the mineral patent.

The undisputed evidence shows that plaintiffs' predecessors in interest had notice that the Emlly Route was not a public road when the road was gated in the 1960s. The gating of the road by the Forest Service was sufficient to put them on notice that the road was not a public road and that the government claimed ownership of the road. *See Park County,* 626 F.2d at 720–721 (the placing of a sign and rock barrier on the purported public right-of-way was sufficient to alter the public that the government claimed an ownership interest in the right-of-way).

The undisputed evidence shows that the plaintiffs' predecessors in interest had notice that the government claimed an ownership interest in the Emlly and Chetco Routes when the government required a mineral survey to allow access to the Allemen property. This action was sufficient notice that the government claimed an ownership interest in the routes that provided access to the Alleman property and that such routes were not public roads. The undisputed evidence shows that plaintiffs had notice of the government claimed an ownership interest in the property when the government required Mr. Alleman to file a plan of operations for the mining claims on the Alleman property as a condition to access the property. *See Id.*

The undisputed evidence shows that plaintiffs' predecessors in interest had notice that there were no public roads, including the Emlly and Chetco Routes, in the Kalmiopsis Wilderness Area when the area in question was designated as a wilderness area. The Wilderness Act and its supporting regulations clearly established that the government did not recognize roads or motorized access within the wilderness area. *See Southwest Four Wheel Drive Ass'n v. Bureau of Land Management,* 271 F.Supp.2d 1308, 1311 (2003), *affirmed,* 363 F.3d 1069 (10th Cir.2004) (plaintiffs knew or should have known when the wilderness study area was designated that there were no public roads within the wilderness study area).

The court finds that *Michel* does not apply to this case. In *Michel,* plaintiffs were seeking to establish the right to use the roads in question; they were not

claiming the roads were public rights-of-way pursuant to R.S. 2477. The plaintiffs in *Michel* were not asserting fee title to the disputed property, while in this case plaintiffs are seeking a declaration that the roads are public roads pursuant to R.S. 2477. In addition, the undisputed evidence in this case demonstrates that the government regulated and limited both plaintiffs' access as well as the access of their predecessors interest through various actions such as erecting a locked gate, requiring a mineral survey, and requiring a plan of operations.[27]

Based on the foregoing analysis, the court finds that the court lacks jurisdiction over plaintiffs' R.S. 2477 claim.[28] Therefore, defendants are entitled to summary judgment and plaintiffs' first claim should be dismissed.

### Second and Third Claims—Common Law Easements

■ Plaintiffs' second and third claims for relief are for an easement by implication or an easement by necessity. Federal defendants and intervenor defendants argue that plaintiffs' claims are preempted by ANILCA and FLPMA, citing *Adams v. U.S.*, 255 F.3d 787 (9th Cir.2001). Plaintiffs argue that *Adams* is not applicable to this case because ANILCA does not apply, ANILCA and FLPMA do not apply to a wilderness area, and under Ninth Circuit precedent a common law easement can exists despite another source of access such as ANILCA, FLPMA or the Wilderness Act.

The court finds that the land in question is National Forest System land as defined in 16 U.S.C. § 1609(a), and as such plaintiffs' common law easement claims are preempted by ANILCA and FLPMA. *Adams*, 255 F.3d at 794 (citing *Adams v. U.S.*, 3 F.3d 1254, 1259 (9th Cir.1993)). The court finds that *Adams* was not overruled by *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). The court in *Amoco* interpreted a different provision of ANILCA then the provision relied upon by the court in *Adams*. *Amoco*, 480 U.S. at 546–555, 107 S.Ct. 1396. Therefore, defendants are entitled to summary judgment and plaintiffs' second and third claims should be dismissed.

### IV. *RECOMMENDATION*

Based on the foregoing, it is recommended that plaintiffs' motion for summary judgment (# 89) be denied, defendants' motion for summary judgment (# 100) be granted, defendant intervenors' motion for summary judgment (# 112) be granted, and this case be dismissed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten days within which to file a response to the objections.* Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will consti-

---

27. The Ninth Circuit's opinion in *Shultz* was withdrawn.

28. The court finds it unnecessary to reach the merits of plaintiffs' claim. However, if necessary plaintiffs' claim fails on the merits as the undisputed evidence shows that plaintiffs cannot establish the existence of the routes as R.S. 2477 rights-of-way as detailed in federal defendants' and defendant intervenors' memoranda.

tute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

January 10, 2005.